# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1943

DAVID VELEZ,

*Plaintiff-Appellee,*

v.

MICHAEL JOHNSON and WISCONSIN
COUNTY MUTUAL INSURANCE CORPORATION,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-C-299—**Aaron E. Goodstein**, *Magistrate Judge.*

_____

ARGUED OCTOBER 28, 2004—DECIDED JANUARY 13, 2005

_____

Before RIPPLE, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* In September of 1999, David Velez was violently assaulted by his cellmate at the Milwaukee County jail. He filed suit under 42 U.S.C. § 1983 alleging that Michael Johnson, a deputy sheriff, violated his constitutional rights by failing to adequately respond when Velez, seeking protection, pushed an emergency call button in his cell prior to the attack. Velez also alleged a negligence claim

under Wisconsin law.[1] Johnson filed a motion for summary judgment asserting a qualified immunity defense, but the district court (Magistrate Aaron E. Goodstein sitting by consent) denied the request. Johnson, as is his right, has filed this interlocutory appeal challenging that decision.

First, a decidedly unpleasant set of facts, which we view in the light most favorable to Velez. *See Saucier v. Katz*, 533 U.S. 194 (2001); *Finsel v. Cruppenink*, 326 F.3d 903 (7th Cir. 2003). Velez was incarcerated at the jail in July of 1999 as a pretrial detainee on charges of robbery and concealing identity. He was kept apart from some inmates because he was a cooperating witness for the state in a double homicide case. Velez was housed in a cell on the jail's 5th floor within its general population. In late August, Velez got a new cellmate, Roberto Zayas, who was being held on charges of sexual assault and battery by a prisoner. At the time, Velez was asked whether he got along with Zayas, and Velez said that he did not know him. Soon after moving in, Zayas began acting "funny." For instance, he talked to himself, paced around the cell, commented on Velez's appearance, and organized Velez's clothing. This made Velez uncomfortable and he requested a transfer. None came.

The assault occurred on September 5. That night, Johnson was working on Velez's floor, along with deputies Allen Bultman and Chad Haldemann. At around 10:30 p.m., Bultman and Haldemann made their initial rounds, while Johnson remained at the central control station in the hallway just outside of the pod home to Velez's cell. Guards working at the control center, among other things, are

---

[1] The complaint also names as a defendant Wisconsin County Mutual Insurance Corporation, Johnson's insurer, whose liability for negligence is purely derivative of Johnson's. *See* Wis. Stat. § 803.04(2); *Rich Prods. Corp. v. Zurich Am. Ins. Co.*, 293 F.3d 981, 983 (7th Cir. 2002).

supposed to monitor emergency calls from inmates confined to their cells. Jail procedures generally require guards to respond to emergencies by going to the scene, though as far as we know there are no specific guidelines about responding to an emergency call button.

Back to the attack. At the same time that Bultman and Haldemann were performing their rounds, Zayas placed a razor blade to Velez's neck. Velez rather subtly tried to get the guards' attention—he didn't loudly scream for help because he was afraid of getting his neck slashed—but his effort was unsuccessful. After the guards departed, Zayas continued to hold the razor to Velez's neck. At that point, Velez pressed the emergency call button hoping for help. Once again, Velez was careful with his words, telling Johnson that he was "not getting along" with Zayas. Johnson asked Velez if he had requested a transfer. Velez replied "yes" but said that there was a conflict. Johnson took no further action. In particular, he didn't go to check out the situation or ask the other guards to do so.

Zayas then anally raped Velez, bit his back several times, and cut his neck. Afterward, Velez again hit the emergency call button and solicited other inmates to do the same. This time Johnson took action, instructing Bultman and Haldemann to investigate. When the guards arrived at the cell, they discovered Velez crying hysterically. Doctors later confirmed that Velez was raped, bitten, and cut. DNA tests identified Zayas as the perpetrator.

Johnson appeals the district court's denial of his motion for summary judgment based on qualified immunity. "We must resolve a qualified immunity issue as early as possible in the proceedings because it is an 'immunity from suit rather than a mere defense to liability.'" *McCann v. Mangialardi*, 337 F.3d 782, 785 (7th Cir. 2003) (quoting *Saucier*, 533 U.S. at 200-01) (emphasis in original omitted). As set out by the Supreme Court in *Saucier*, we apply a two-

step approach in evaluating a qualified immunity defense. As applicable here, we first determine whether, taken in the light most favorable to Velez, the facts alleged demonstrate that Johnson violated a constitutional right. *Saucier*, 533 U.S. at 201. If so, we ask whether that right was clearly established. *Id.*

Velez alleges that Johnson's failure to adequately respond to the emergency call button violated his constitutional rights. The law is clear: "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners." *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001) (citation omitted). Velez, as we said, was a pretrial detainee at the time of the assault; therefore, his claim arises under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. But as we have noted time and again, there is "little practical difference between the two standards." *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). This is so because it would be bizarre indeed to afford greater protection to a convicted prisoner than to a pretrial detainee. But in asserting a constitutional claim based on a failure to prevent an assault from another inmate, it is not enough for Velez to show that Johnson failed to prevent the attack. Instead, he must demonstrate that Johnson acted with "deliberate indifference," i.e., that he was subjectively aware of, but disregarded, a serious risk to Velez's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.), *cert. denied*, 124 S. Ct. 531 (2003).

Viewing the facts in the light most favorable to the plaintiff, we agree with the district court that Velez laid out facts that, if true, could support a finding of deliberate indifference. The crux of Velez's complaint is that he had a razor placed to his neck, signaled Johnson for help in the only way he could, but was effectively ignored and subse-

quently raped. Obviously, being raped while a razor is at one's neck is a serious harm.

Consider the situation—two men, who are strangers to each other, locked together in a small cell for hours. For many people on the outside, even sharing a room for one night with a stranger at a Holiday Inn would be an unpleasant experience. And if that stranger was facing criminal sexual assault charges, the experience would be much more than merely unpleasant. And in a jail, the weaker of two cellmates has no real opportunity to protect himself against an attack. That's the situation Velez was in on September 5.

We believe that Velez has set forth facts establishing that Johnson knowingly disregarded warnings that a serious harm could occur. For one thing, Velez pushed an "emergency call button," a clear indication that an emergency was at hand. And Johnson had no reason to doubt that there was an emergency, as Velez had no history of crying wolf or abusing the call button. Moreover, Velez specifically told Johnson that he was having a conflict with Zayas, but Johnson did nothing. And finally, Johnson was instructed to personally respond to emergencies—and for good reason, given what happened. If these allegations are true, a jury could find that Johnson acted with deliberate indifference.

Johnson argues that he could not have violated Velez's constitutional rights because he had no specific awareness that Zayas had a razor to Velez's throat or that he was planning a rape. We disagree. Johnson did not have to know the specifics of the danger to be culpable. Indeed, accepting Johnson's position would essentially reward guards who put their heads in the sand by making them immune from suit—the less a guard knows the better. That view is inconsistent with *Farmer*. What matters is that Johnson was aware of a serious risk of harm in some form, be it assault or the more serious transgression that actually occurred. And just because Velez did not volunteer detailed informa-

tion does not mean that Johnson was not made aware of a serious risk. Indeed, a jury could well find that the vague nature of Velez's complaint made it even more incumbent on Johnson to investigate further. And as it turned out, Velez could not have provided any more information to Johnson without risking a slashed neck.

Velez has also met the second *Saucier* requirement that the constitutional right be clearly established. Before liability will attach, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although Velez and Johnson disagree over how the constitutional right at issue here should be characterized, we believe it is plainly the right to be free from deliberate indifference to rape and assault. There can be no debate that this right was clearly established at the time. *See Farmer*, 511 U.S. at 833 (prison officials have duty to protect inmates from rape and assault).

Just because Johnson is not immune from suit, however, does not mean that a jury will find him liable for violating Velez's constitutional rights. What it does mean is that Velez has set forth facts that, if accepted as true, support a viable deliberate indifference claim. It is up to a jury to decide whether Johnson bears some responsibility for the attack Velez had to endure.

In addition to appealing the district court's denial of summary judgment on qualified immunity, Johnson also seeks review of its denial on the merits. He contends that there are no triable issues of fact regarding whether he acted with deliberate indifference. But at this point we do not have jurisdiction to consider whether Johnson violated Velez's constitutional rights—we may only examine the merits through the prism proscribed in *Saucier*, nothing more. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Anderson v. Cornejo*, 355 F.3d 1021, 1022-23 (7th Cir. 2004); *Krein v.*

*Norris*, 309 F.3d 487, 493 (8th Cir. 2002). And because we believe that the court's resolution of the qualified immunity issue was sound, its judgment is AFFIRMED.


A true Copy:

     Teste:


                   _____
                   *Clerk of the United States Court of*
                   *Appeals for the Seventh Circuit*