NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2014[*]
Decided July 17, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-3156

| | |
|---|---|
| SONNIEL R. GIDARISINGH, *Plaintiff–Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 12-CV-455 |
| WILLIAM POLLARD, et al., *Defendants–Appellees.* | C.N. Clevert, Jr., *Judge.* |

**O R D E R**

While Sonniel Gidarisingh was imprisoned at Green Bay Correctional Institution, an inmate affiliated with the Vice Lords gang threatened to beat him. Gidarisingh—who was serving a life sentence for shooting two Vice Lords members—reported the threat to a supervisory prison guard and asked for help. The guard never replied to the request, and about 23 hours later, the inmate attacked Gidarisingh. Gidarisingh

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

contends in this civil-rights suit that the guard deliberately ignored a known, substantial danger and thereby violated the Eighth Amendment. The district court granted summary judgment to the prison guard on this claim, but we conclude that a reasonable jury could find that the prison guard was aware of, and deliberately disregarded, a serious risk of injury to Gidarisingh. We agree, however, with the district court's grant of summary judgment to the defendants on Gidarisingh's other claims.

Because Gidarisingh is the non-moving party, we set forth the facts and draw reasonable inferences in his favor. *See Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Gidarisingh was convicted in 1997 of homicide and attempted homicide for shooting two Vice Lords gang members. He was incarcerated at Green Bay Correctional Institution when, on October 28, 2007, inmate Bradford Lewis (whose cell was down the hall from Gidarisingh's) threatened Gidarisingh. Lewis warned Gidarisingh that he and his "gang brothers" would "beat Gidarisingh's ass for killing two of their gang brothers." That evening, as Gidarisingh waited in line for his medication, Lewis repeated his threat. After Gidarisingh responded that he didn't know what Lewis was talking about, Lewis spat in his face.

Gidarisingh returned to his cell and completed a form to seek help from the prison authorities. He sent the note to Mark Lesatz, the prison's second-shift commander on duty daily from 2 p.m. to 10 p.m. The prison has not retained the note, so it is lost to history. But Gidarisingh tells us that in the note he recounted how Lewis had vowed to beat him for shooting Lewis's "gang brothers" and that Lewis later punctuated the threat by spitting in Gidarisingh's face. He pleaded for "security to intervene and protect" him. He gave the note to a guard who picked up the mail at 9:30 p.m., a half-hour before Lesatz's shift ended.

The next day Gidarisingh did not hear back from Lesatz or any other guards about his request for protection, and around 8:00 p.m. Lewis fulfilled his threat. When Gidarisingh left his cell to pick up his medication, Lewis approached him, "banging his right fist in his left open palm." Lewis then punched Gidarisingh several times in the face and head. After Gidarisingh swung back in defense, two other inmates joined the fray. Guards ordered the inmates to stop fighting, but the brawl continued. Lesatz was among the guards who responded to the fight. (Gidarisingh swears that Lesatz later admitted that, before the attack, he had received the note alerting him to Lewis's threat; Lesatz attests that he "does not recall receiving any communication from Gidarisingh related to concerns for his personal safety.") During the brawl, Gidarisingh's head hit guard Chad Princl's face. By the time guards broke up the fight, Gidarisingh was

bleeding profusely from his eyes, nose, and lips. Guards shackled Gidarisingh and escorted him to the prison's health-care unit for medical treatment.

Soon after the fight, prison officials initiated disciplinary proceedings against Gidarisingh, and after a hearing, found him guilty. In a conduct report, the authorities charged Gidarisingh with two offenses. The first charge, for battery, alleged that he had head-butted Princl in the face, injuring Princl's nose. *See* WIS. ADMIN. CODE DOC § 303.12(1). Gidarisingh also faced a charge of disobeying orders for continuing to fight after guards had ordered him to stop. *See id*. § 303.24. Before the disciplinary hearing, Gidarisingh submitted a 12-page statement. In it, he explained he had accidentally "bounce[d] into someone with [his] face" and repeatedly apologized "to the guard that got hurt." Gidarisingh also suggested that, during the commotion of the fight, he could not hear the guards ordering him to stop fighting. After listening to Gidarisingh's oral testimony, the hearing officer found Gidarisingh guilty of both offenses and sentenced him to 360 days' disciplinary segregation. He explained that he had considered Gidarisingh's statements, but found the author of the conduct report more credible. The officer did not mention a video recording of the fight that he had viewed outside of Gidarisingh's presence. Gidarisingh appealed the ruling through the administrative appeals process, contending that he was denied due process because, among other reasons, he did not have the chance to review the video, but he lost his appeal.

Prison officials later asked state prosecutors to charge Gidarisingh with criminal battery based on the head-butt. *See* WIS. STAT. § 940.20(1). At some point after the incident, Lesatz "inadvertently failed" to save the video recording to a disk, and for that reason Gidarisingh moved to dismiss the criminal charge. Though he did not dispute that his "head made contact with [] Princl's face," he argued that the case should be dismissed because prison officials did not preserve a possibly exculpatory video. The state court agreed and dismissed the case.

Gidarisingh filed this suit, raising several claims under 42 U.S.C. § 1983. He first asserts that Lesatz had failed to protect him from Lewis's attack. Second, he contends that, by not letting him see and later losing the video, prison officials violated his due-process rights. Third, he claims that prison officials unconstitutionally disciplined him on two other occasions, retaliated against him, and maliciously prosecuted him with the criminal charge for head-butting.

After discovery on these claims, the defendants moved for summary judgment, and the district court granted the motion. First, the court explained that no reasonable

jury could conclude that Lesatz was deliberately indifferent for failing to respond to Gidarisingh's note within 23 hours. Second, the court rejected the due-process claim on the ground that any wrongful conduct was "random and unauthorized" and could be adequately redressed through state remedies. Finally, the court concluded that Gidarisingh did not present any evidence supporting his other claims.

Gidarisingh first argues on appeal that the district court should not have granted summary judgment on his failure-to-protect claim. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation omitted); *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). An inmate can prevail on a claim that a prison official failed to protect him if the official showed "deliberate indifference"; that is, that the defendant was subjectively aware of and disregarded a "substantial risk of serious harm" to the inmate. *Farmer*, 511 U.S. at 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). To make a guard subjectively aware of a serious risk of attack, the inmate must communicate a specific and credible danger. *Compare Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010); *Santiago v. Lane*, 894 F.2d 218, 220, 223–24 (7th Cir. 1990); *Young v. Selk*, 508 F.3d 868, 873–74 (8th Cir. 2007); *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995); *with Dale*, 548 F.3d at 569 (prisoner's "vague statements that inmates were 'pressuring' him and 'asking questions'" were insufficiently specific to put guards on notice that he was in danger). But even when he is aware of a substantial risk of serious harm to an inmate, a prison guard is not liable if he responds reasonably to the risk, whether or not his response ultimately prevents the harm. *Farmer*, 511 U.S. at 844; *Borello v. Allison*, 446 F.3d 742, 747–48 (7th Cir. 2006).

The evidence introduced at summary judgment can support a finding that Lesatz was subjectively aware of a serious risk of harm to Gidarisingh and inexplicably ignored it. We address first Lesatz's awareness of the risk. "In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (internal quotation and brackets omitted). That is exactly what Gidarisingh did. Gidarisingh sent a note addressed to Lesatz, specifying a prisoner (Lewis) who had just threatened him. The note reflected that the threat was credible (because it included a plausible motive—retaliation for a gang-related shooting), and it reinforced the threat's credibility by referring to an already-completed act (the face-spitting). Moreover, Gidarisingh avers (and, at this stage, we must accept) that Lesatz admitted that he received the note before the attack, allowing him time to respond. We don't know exactly how much time Lesatz had to take action, but the record allows a

rational inference that he received the note either near the end of his shift a day before the attack or at the beginning of his next shift, several hours before the attack. Thus the evidence suggests that Lesatz knew about the threat well before the attack.

Despite his awareness of the threat, Lesatz did nothing. "Once prison officials know about a serious risk of harm, they have an obligation to take reasonable measures to abate it." *Dale*, 548 F.3d at 569 (internal quotation omitted). But as far as the record so far shows, Lesatz did not investigate the threat, delegate the matter to an underling, or deal first with more pressing issues. If prison officials are aware of a serious threat "and do nothing, that is deliberate indifference." *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995); *see also Velez v. Johnson*, 395 F.3d 732, 735–36 (7th Cir. 2005); *Haley v. Gross*, 86 F.3d 630, 642–43 (7th Cir. 1996); *Pope*, 86 F.3d at 92; *Howard v. Waide*, 534 F.3d 1227, 1240–41 (10th Cir. 2008). Had Lesatz taken *some* reasonable action in response to the threat, even if it did not ultimately prevent an attack, he might avoid liability. *See Riccardo v. Rausch*, 375 F.3d 521, 525–28 (7th Cir. 2004); *Lewis v. Richards*, 107 F.3d 549, 553–54 (7th Cir. 1997). But because the record suggests that Lesatz did nothing, a reasonable jury could conclude that he deliberately disregarded a serious risk to Gidarisingh's safety.

The district court gave two primary reasons for coming to a contrary conclusion—and Lesatz relies on similar arguments on appeal—but neither convinces us. First, the district court concluded that no reasonable jury could find Lesatz deliberately indifferent because, even if it granted Gidarisingh the generous inference that Lesatz received the note 23 hours before the attack, that time was too short to require a response. We might agree if the record contained evidence that other, more urgent demands pressed on Lesatz's time after he received the note, or that Gidarisingh had a history of crying wolf to get immediate attention. Then, a delayed response might be reasonable. But nothing in the record explains the delay, so we cannot say that Lesatz's inaction was reasonable. *See Velez*, 395 F.3d at 735–36 (no qualified immunity for guard who did not immediately investigate situation after inmate pressed emergency call button); *Lane*, 894 F.2d at 220, 223–24 (summary judgment inappropriate where inmate was attacked the same evening that he reported a threat). Second, the district court wrote that Gidarisingh put himself at risk by "voluntarily" leaving his cell, which allowed Lewis to sneak up on him. But "contributory negligence is not a defense to an allegation of intentional or reckless conduct." *See Lane*, 894 F.2d at 224.

We agree with the district court, however, that summary judgment was appropriate on Gidarisingh's procedural due-process claims, though we arrive at this

conclusion for a different reason. We will assume that Gidarisingh had a constitutionally protected liberty interest in avoiding 360 days in disciplinary segregation, since the prison officials do not argue otherwise—though that question is hardly settled. *See Sandin v. Conner*, 515 U.S. 472, 485–86 (1995); *Hardaway v. Meyerhoff*, 734 F.3d 740, 744–45 (7th Cir. 2013). The most serious due-process argument Gidarisingh pursues is that the prison authorities viewed outside of his presence the video recording of the brawl, without giving him a chance to view it or to respond. An inmate has a right in prison disciplinary proceedings to view potentially exculpatory video evidence, unless the prison authorities cite a legitimate security reason that precludes the offender from seeing the tape, *see Piggie v. Cotton*, 344 F.3d 674, 678–79 (7th Cir. 2003)—and the prison officials have not cited such a reason.

Nonetheless, due process was not violated because the video could not have helped Gidarisingh's defense against either of the two disciplinary charges. *See Jones v. Cross*, 637 F.3d 841, 847–49 (7th Cir. 2011); *Scruggs v. Jordan*, 485 F.3d 934, 940–41 (7th Cir. 2007). First, for the head-butting charge, Gidarisingh did not deny striking Princl with his head and hurting him. Instead, he claimed that the contact was accidental or that he thought Princl was one of his attackers. But the disciplinary regulation covers all harmful contact, regardless of intent. It states that "[a]ny inmate who causes bodily injury or harm to another is guilty of an offense." WIS. ADMIN. CODE DOC § 303.12(1). It no longer includes a *mens rea* requirement, although it once did. *See State ex rel. Dillard v. McCaughtry*, 658 N.W.2d 87, 2003 WL 328429, at *1 & n.1 (Wis. Ct. App. 2003) (unpublished disposition). Thus, the video would not have exculpated Gidarisingh. *See Jones*, 637 F.3d at 847–49; *Scruggs*, 485 F.3d at 940–41. Gidarisingh replies that the dismissal of his criminal charge establishes that the video was exculpatory, but he is incorrect. The criminal charge—unlike the administrative charge—requires an intent to harm. *See* WIS. STAT. § 940.20(1). Second, for the charge of disobeying orders, *see* WIS. ADMIN. CODE DOC § 303.24, Gidarisingh does not explain how the video could have helped him because he does not deny that guards ordered him to stop fighting; he merely denies hearing the order.

We have considered Gidarisingh's other arguments and briefly explain why we reject them. Gidarisingh contends that his discipline for two other incidents violated his procedural due process rights because the disciplinary decisions were based on "false evidence." But because Gidarisingh received adequate hearings and these disciplinary decisions were supported by "some facts," he cannot succeed in challenging these decisions. *See Hanrahan v. Lane*, 747 F.2d 1137, 1139–41 (7th Cir. 1984). Gidarisingh's retaliation claims fail because he has not presented admissible evidence that any

defendant acted against him *because* he engaged in constitutionally protected activity. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 964–66 (7th Cir. 2012). Finally, Gidarisingh attempts to raise a malicious-prosecution claim against prison officials for referring the battery charge to criminal authorities. But that claim fails because he has not presented evidence that the prison officials referred the charge with malice. *See Wis. Pub. Serv. Corp. v. Andrews*, 766 N.W.2d 232, 238 (Wis. Ct. App. 2009).

Accordingly, we **VACATE** the judgment and **REMAND** only with respect to the failure-to-protect claim against Lesatz. In all other respects, the judgment is **AFFIRMED**.