# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2023

Lyle W. Cayce
Clerk

No. 22-40126

Deonte Reed,

*Plaintiff—Appellant*,

*versus*

Nacogdoches County; Jennifer Riddley; Kimberly Fuentes; Jason Bridges,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:19-CV-86

_____

Before Higginbotham, Jones, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Deonte Reed, a pretrial detainee, sued Nacogdoches County and several employees of its jail for allegedly violating his constitutional rights. The district court granted summary judgment to the defendants. We affirm.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40126

## I.

At the summary judgment stage, we draw all reasonable inferences in Reed's favor and view the facts in the light most favorable to him. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

On June 8, 2017, Kimberly Fuentes was the lone control room operator at the Nacogdoches County Jail charged with responding to the emergency intercom system. That intercom system allowed pretrial detainees to page the control room and alert the jail staff to problems or emergencies.

At 12:42:28 p.m., Reed had a seizure and fell out of bed. Almost a minute later, at 12:43:18 p.m., the emergency intercom rang in the control room. When the emergency intercom rang, Fuentes was making a personal phone call to pay her brother's electric bill. Over the next three minutes, the emergency intercom rang six more times. Fuentes answered some of the intercoms and ignored others. At 12:45:44 p.m., Fuentes put her personal call on hold, answered the intercom, said "state your emergency," listened for four seconds, then said "they're working on it—they'll be down in a minute." Fuentes ended her personal call at 12:46:30 p.m., just over three minutes after the emergency intercom first rang. Six seconds after Fuentes hung up the phone, at 12:46:36 p.m., Officers Jeremy Fountain, Brandy Mobley, and Chad Hooper arrived at Reed's dorm. The total elapsed time from the first intercom call to the arrival of the officers was three minutes and eighteen seconds.

Meanwhile, Nurse Jennifer Riddley was in the control room with Fuentes. When Riddley overheard Fuentes's radio message, she asked what was happening, and Fuentes told her that an inmate was having a seizure. Riddley left the control room and walked towards the dorm where Reed was housed.

No. 22-40126

While Riddley was heading to the dorm, Officer Fountain was assessing Reed; he checked for a pulse but couldn't find one and observed no signs of breathing. Neither Officer Fountain nor Officer Mobley was trained in CPR, so neither attempted to resuscitate Reed. Riddley arrived at the dorm at 12:48:03 p.m., forty seconds after she had exited the control room.

Nurse Riddley assessed Reed and found that he had a "faint" pulse and was "gasping for air." She then determined that she needed a CPR mask, automated external defibrillator, blood pressure cuff, and pulse oximeter to properly treat him. She left the dorm at 12:49:40 p.m.—ninety-seven seconds after arriving—and headed to the jail's medical room to get the supplies. She didn't tell the officers what to do while she was gone.

When she arrived at the medical area, she told Nurse Sherry Moton that she needed a pulse oximeter and someone provided one. When Moton heard that Reed didn't have a pulse and wasn't breathing, she got up and accompanied Riddley back down the hallway. At 12:51:40 p.m., exactly two minutes after she had left the dorm, Riddley reentered with Moton.

When the nurses entered the dorm, they assessed Reed to ensure that it was safe to begin CPR. Approximately three minutes after reentering the dorm, at 12:54:54 p.m., Officer Mitchell Ray (who had recently arrived) began chest compressions while Moton performed rescue breaths.

At 12:59:15, the paramedics arrived. The paramedics used their own AED to shock Reed and took over chest compressions. The paramedics wheeled Reed out of the dorm at 1:03:45 p.m. At the hospital, the doctors diagnosed Reed with an anoxic brain injury, but he survived.

Sheriff Jason Bridges was not present at the jail during the June 8 incident and had no personal involvement in the event. After reviewing the reports, Sheriff Bridges disciplined both Fuentes and Riddley. He accepted Fuentes's resignation because she violated jail policy by handling personal

business while on duty. He did the same for Riddley because he disapproved of her leaving a patient to retrieve medical equipment. Separately, the Texas Board of Nursing suspended Riddley for two years because it found that her delay in medical intervention likely injured Reed. Riddley admitted that, in retrospect, she should have started CPR earlier. She stated that it was something she "probably should" have done but "in the heat of the moment [she] just didn't."

Reed sued Fuentes, Riddley, Sheriff Bridges, and the County under 42 U.S.C. § 1983. He claimed the defendants violated his Fourteenth Amendment rights when they allegedly denied him access to medical attention. He also claimed the County violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). The trial court granted summary judgment to the defendants and entered final judgment against Reed. Reed timely appealed.

## II.

We review the trial court's grant of summary judgment *de novo*. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001); *see* Fed. R. Civ. P. 56. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (quotation omitted). We may affirm on any ground supported by the record. *In re S. Recycling, LLC*, 982 F.3d 374, 382 (5th Cir. 2020).

Because the individual defendants asserted qualified immunity, Reed bears the burden of overcoming the affirmative defense. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). To do so, Reed must prove

No. 22-40126

"(1) that the official[s] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). We may address the two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III.

We hold that (A) Fuentes, (B) Riddley, and (C) Sheriff Bridges are entitled to qualified immunity on Reed's Fourteenth Amendment claims.

## A.

Reed's only claim against Fuentes is a Fourteenth Amendment deliberate indifference claim.[1] To prove a Fourteenth Amendment deliberate indifference claim, a detainee must prove the jail official (1) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," (2) that she "actually drew the inference," and (3) that she "disregarded that risk." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (quotation omitted). That means the detainee must show the jailer was aware of a "substantial risk of serious harm" to him and that she nevertheless "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Actions by officials that are merely "inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson*

---

[1] We have held that a pretrial detainee's Fourteenth Amendment claims are governed by the same legal standards the Supreme Court uses for a prisoner's Eighth Amendment claims. *See Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019).

No. 22-40126

*v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (per curiam).

The second prong of qualified immunity requires us to determine whether the jailer violated the detainee's *clearly established* constitutional rights. "A right is clearly established if it is one that is sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (emphasis added) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Reed bears the "heavy burden" to show that the right Fuentes violated was clearly established. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). And a right is only clearly established where the relevant precedent "has placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In short, executive officers are entitled to qualified immunity except "the plainly incompetent or those who knowingly violate the law." *Morrow*, 917 F.3d at 876.

Here, we need not consider the first prong of qualified immunity because Reed cannot satisfy the second. To begin the analysis, we must properly frame the right at issue "in light of the specific context of the case." *Cope*, 3 F.4th at 204 (noting courts must be careful not to "define clearly established law at a high level of generality"). Considering the specific factual context of this case, the right at issue here is: Whether it violates the Fourteenth Amendment for a jailer to ignore emergency intercom calls for three minutes and fourteen seconds while handling a personal phone call.[2]

─────────────────────

[2] The record is unclear on when Fuentes dispatched medical personnel to Reed's cell, so we interpret all ambiguities in Reed's favor. The time between the first emergency intercom call (12:43:18 p.m.) and Fuentes's first answer over the intercom (12:44:11) was 53 seconds. It is unclear whether Fuentes dispatched medical personnel when she first answered because when Fuentes next answered another intercom call one minute and 34 seconds later, she stated: "they're working on it—they'll be down in a minute." But given

No. 22-40126

We conclude Fuentes is entitled to qualified immunity. That is because Reed cannot point to a case that placed the constitutional question here beyond debate at the time of the incident in 2017. Reed's best case is *Stewart v. Guzman*, 555 F. App'x 425, 432 (5th Cir. 2014). An *unpublished circuit* case cannot clearly establish the law for purposes of qualified immunity. *See Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022), *cert. denied*, No. 22-564, 2023 WL 3046124 (Apr. 24, 2023) (mem.). But even if it could, *Stewart*'s facts aren't close to the facts here. In *Stewart*, jail officials ignored an emergency intercom on four separate dates, watched and ignored an inmate lying on the floor, and ignored other inmates knocking on the cell door, resulting each time in the inmate having an asthma attack. *Id.* at 426–29. The jail officials there also "intentionally disregarded" the inmate's "established treatment plan." *Id.* at 426, 432. But here, unlike in *Stewart*, Fuentes ignored the emergency intercom on only one date. And in any event, there is no evidence that Fuentes *intentionally* disregarded anything. Thus, *Stewart* is not close enough factually to give fair warning to a reasonable officer in Fuentes's shoes that her conduct in ignoring the emergency intercom—without more—violated the Constitution.

Further, it was not until July 2021 that our court held that failing to promptly call for emergency assistance in the face of a *known*, serious medical emergency violates the Constitution. *See Cope*, 3 F.4th at 209 ("For these reasons, we now make clear that promptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency—*e.g.*, suffering from a suicide attempt—constitutes unconstitutional conduct.");

_____

the summary judgment posture, we assume that she did not dispatch medical personnel until 12:46:32 right after she ended her personal call. The total elapsed time from the first intercom call to the Fuente's termination of her personal call was three minutes and fourteen seconds. The total elapsed time from the first intercom call to the arrival of the officers was three minutes and eighteen seconds.

*id.* (specifically noting that the Fifth Circuit had not "spoken directly" to this issue previously). Even after *Cope*, it's not clear that our precedents can clearly establish the law. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (assuming published circuit precedent can in theory clearly establish law but only to reverse the Ninth Circuit's reliance on it). And it's also not clear that every reasonable officer would conclude that ignoring an emergency intercom—which *might* be alerting to a medical emergency—is the same as an officer *knowing* for a fact that a medical emergency is ongoing and not calling for emergency assistance like the officer in *Cope*.[3] Thus, Fuentes is entitled to qualified immunity on Reed's Fourteenth Amendment claim.

## B.

We reach the same conclusion regarding Reed's Fourteenth Amendment deliberate indifference claim against Riddley. Even assuming Riddley's actions in delaying CPR violated the Fourteenth Amendment, Reed points to no controlling case law that clearly governs this situation. On the contrary, this Court's recent decision in *Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021), underscores the lack of clearly established law surrounding delays in administering CPR. There, the Court held that officers who delayed CPR for three minutes while retrieving medical equipment and

---

[3] Reed also mentions an Eighth Circuit case and a Seventh Circuit case in an attempt to demonstrate a "robust consensus" of persuasive authority that ignoring emergency intercom calls violates clearly established law. *Turner v. Lt. Driver*, 848 F.3d 678, 686 (5th Cir. 2017); *see Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006); *Velez v. Johnson*, 395 F.3d 732, 735–36 (7th Cir. 2005). But in *Gordon*, the officers did more than ignore emergency intercom calls; they ignored an inmate telling them specifically that he couldn't breathe even though they *knew* that particular inmate "was on high observation." 454 F.3d at 864. And in *Velez*, the right at issue was "the right to be free from deliberate indifference to rape and assault," not medical assistance. 395 F.3d at 736. Neither of these cases helps Reed.

performing a "sternum rub" on a man who was not breathing did not act with deliberate indifference. *Id.* at 420–21. The Court reasoned that while "these measures may have been inadequate, Plaintiffs [did] not present any evidence that the Officers knew they were insufficient and intentionally failed to do more out of indifference to [the man's] well-being." *Id.* at 421. *Aguirre* illustrates that where officials elect to do *something* rather than *nothing*, it is difficult or impossible to say they acted with "indifference" much less *deliberate* indifference. Thus, even assuming a constitutional violation, we conclude Riddley is entitled to qualified immunity.

## C.

We next turn to Sheriff Bridges. Reed sued the Sheriff for implementing unconstitutional policies that led to Reed's injuries. To establish supervisory liability for Sheriff Bridges on such a theory, Reed must show both "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)). A policy may be an official "statement, ordinance, regulation, or decision" or "a persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Leal v. Wiles*, 734 F. App'x 905, 907–08 (5th Cir. 2018). The plaintiff must show that an unconstitutional policy was "the moving force" behind Fuentes's "constitutional violation." *Taylor v. Stevens*, 946 F.3d 211, 227 (5th Cir. 2019).

No. 22-40126

Here, Reed points to three such policies.[4] But again, we need not determine whether these policies are unconstitutional because Reed cannot show a violation of clearly established law in any event.

*Policy #1: Supervisory Liability for Fuentes's Actions*. Even assuming Fuentes's actions in the control room were unconstitutional, Reed cannot show that Sheriff Bridges implemented an unconstitutional policy that was "the moving force" behind Fuentes's "constitutional violation." *Taylor v. Stevens*, 946 F.3d 211, 227 (5th Cir. 2019). That is for two reasons. First, episodic incidents are generally not fodder for unconstitutional-policy claims. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (episodic act theories are where "the complained-of harm is a particular act or omission of one or more officials" and "an actor usually is interposed between the detainee and the municipality"); *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021) (holding "isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy"). And here, there is no evidence that control room operators routinely ignored emergency intercom calls. To the contrary, Reed points to just one prior incident. And second, Reed cannot point to any policy that Sheriff Bridges adopted that constituted "the moving force" behind Fuentes's actions. That's because the Sheriff's only official act regarding those actions was to accept her resignation.

*Policy #2: Declining to Train First Responders in CPR*. Reed next claims that Sheriff Bridges adopted a policy of failing to train jailers in CPR. To establish such a claim, Reed must demonstrate that "(1) the municipality's training procedures were inadequate, (2) the municipality was deliberately

_____

[4] Reed has forfeited any other arguments as to Sheriff Bridges' supervisory liability by failing to brief them on appeal. *See Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017).

indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the violations in question." *See Anokwuru*, 990 F.3d at 965. To establish deliberate indifference to the need for proper training, Reed must show that Sheriff Bridges had "notice of a pattern of similar violations, which were fairly similar to what ultimately transpired." *Id.* at 966.

Reed cannot make that showing. *Id.* at 965. Just like in *Anokwuru*, Reed "only points to his own incident as proof of a policy of deliberate indifference" and doesn't put on any evidence that incomplete CPR training caused similar injuries to his in the past. *Id.* at 766. True, we have said that in limited instances a plaintiff "may establish deliberate indifference" through "a single incident." *Burge v. St. Tammany Parish*, 336 F.3d 363, 372 (5th Cir. 2018). But that's only where the state actors were "provided no training whatsoever." *Anokwuru*, 990 F.3d at 966. Here, Officer Ray knew CPR, and the jail had provided CPR training in the past. Finally, we have never held that the Constitution requires that all jailers be trained in CPR. *Cf. Est. of Allison v. Wansley*, 524 F. App'x 963, 973 (5th Cir. 2013) (declining to decide whether failing to train jailers in CPR amounted to deliberate indifference). So Sheriff Bridges is entitled to qualified immunity.

*Policy #3: Allowing LVNs to Practice without a Physician Present*. Reed argues the Sheriff's policy of employing only licensed vocational nurses ("LVNs") at the jail was an unconstitutional condition of confinement.

In condition of confinement cases, the court asks if there is "a rule," a "restriction," "an identifiable intended condition or practice," or "acts or omissions" by a jail official that are "sufficiently extended or pervasive" that "amount to punishment of the detainee." *First quoting Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 468 (5th Cir. 2015) (quotation omitted), *then quoting Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To establish a constitutional violation, Reed must prove three elements: (1) a rule or restriction or the

existence of an identifiable intended condition or practice; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of the detainee's constitutional rights. *See Est. of Bonilla by and through Bonilla v. Orange Cnty.*, 982 F.3d 298, 308–09 (5th Cir. 2020).

Recently, our court addressed nearly the same issue in *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456 (5th Cir. 2015). There, the Court held there is "nothing constitutionally deficient about" employing LVNs who call doctors for assistance at a jail. That is because "the jail's multi-tiered medical system" had a "reasonable relation to providing medical attention to inmates with varying levels of need." *Id.* at 467, 469. So too here, the Nacogdoches County Jail used LVNs who called doctors rather than providing care directly to inmates. And like in *Henson*, Reed has not demonstrated a "pervasive pattern of serious deficiencies in providing for his basic human needs." 795 F.3d at 469.

## IV.

Finally, a brief word about Reed's remaining claims.

For substantially the same reasons that Sheriff Bridges is not liable as a supervisor, Reed also cannot establish *Monell* liability against the County. *See Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (noting the § 1983 liability standards for a municipality are the same as those for "an individual to whom the municipality has delegated responsibility to directly supervise the employee").

Reed's ADA and RA claims against the County fail too. These two claims have nearly identical elements. *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Assuming for the sake of discussion that Reed has a qualifying disability under the ADA and the RA, his claims nonetheless fail because he has offered no evidence that the jail discriminated against him *because of* his disabilities. *See Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir.

2012) (ADA and RA claims require a showing of discrimination "by reason of [the plaintiff's] disability").[5]

AFFIRMED.

_____

[5] Reed concedes that his *Kingsley*-based argument is directly foreclosed by our precedent. Blue Br. 33; *see Cope*, 3 F.4th at 208 (rejecting Reed's exact argument that *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), abrogates the Fifth Circuit's deliberate-indifference precedent requiring subjective knowledge because *Kingsley* dealt with excessive force claims, which are different from medical-treatment claims).