# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-10253

United States Court of Appeals
Fifth Circuit

**FILED**

December 20, 2019

Lyle W. Cayce
Clerk

TRENT TAYLOR,

       Plaintiff–Appellant,

versus

ROBERT STEVENS, Warden, Individually and in their Official Capacity;
ROBERT RIOJAS,
Sergeant of Corrections Officer, Individually and in their Official Capacity;
RICARDO CORTEZ,
Sergeant of Corrections Officer, Individually and in their Official Capacity;
STEPHEN HUNTER,
Correctional Officer, Individually and in their Official Capacity;
LARRY DAVIDSON,
Correctional Officer, Individually and in their Official Capacity;
SHANE SWANEY,
Sergeant of Corrections Officer, Individually and in their Official Capacity;
FRANCO ORTIZ,
Correctional Officer, Individually and in their Official Capacity;
CREASTOR HENDERSON, L.V.N.,
Individually and in their Official Capacity;
STEPHANIE ORR, L.V.N., Individually and in their Official Capacity;
JOE MARTINEZ,

       Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas

No. 17-10253

Before OWEN, Chief Judge, JONES and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Trent Taylor, a Texas inmate, sued Robert Stevens, Robert Riojas,[1] Ricardo Cortez, Stephen Hunter, Larry Davidson, Shane Swaney, Franco Ortiz, Joe Martinez, Creastor Henderson, and Stephanie Orr[2] under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. At the time of the events, the defendants were prison officials at the John T. Montford Unit of the Texas Department of Criminal Justice ("Montford Unit").

Taylor contended generally that he was housed in unconstitutional conditions and that various defendants were deliberately indifferent to his health and safety. He sought compensatory and punitive damages, a declaratory judgment, and injunctive relief.

Only Taylor's individual-capacity claims are relevant to this appeal. Specifically, Taylor appeals the summary judgment, on the basis of qualified immunity ("QI"), for

- Stevens, Riojas, Cortez, Hunter, Davidson, Swaney, Martinez, and Henderson, on Taylor's claim that they violated the Eighth Amendment in forcing Taylor to live in two filthy cells for six days.

- Riojas, Martinez, Ortiz,[3] and Henderson,[4] on Taylor's claim that they were deliberately indifferent to his health and safety in refusing to escort

---

[1] The district court spelled Riojas's last name "Rojas," but both sides spell it "Riojas" on appeal.

[2] Taylor also sued many other defendants for different events during his incarceration at the Montford Unit. But Stevens, Riojas, Cortez, Hunter, Davidson, Swaney, Ortiz, Martinez, Henderson, and Orr are the defendants-appellees for this appeal.

[3] Ortiz has not filed a brief.

[4] The district court mistakenly analyzed this claim as involving only Riojas, Martinez, and Ortiz, failing to include Henderson. Yet Taylor's complaint averred that Henderson was involved in denying him a trip to the restroom, and on appeal he references Henderson as a proper defendant. We therefore review the claim with Henderson as a defendant-appellee. Regardless, we conclude that Henderson is entitled to QI on the restroom-related claim.

No. 17-10253

him to the restroom for a twenty-four-hour period.

- Riojas, Martinez, and Henderson, on Taylor's claim that they violated the Eighth Amendment in failing immediately to assess his chest pains.

- Orr, on Taylor's claim that Orr was deliberately indifferent to Taylor's health in failing immediately to examine Taylor upon his request to see a doctor.

- Warden Stevens, on Taylor's claim that Stevens created and implemented an unconstitutional policy that allowed the above violations.

We affirm as to all claims, save one.

## I.

Stevens, Riojas, Cortez, Hunter, Davidson, Swaney, and Martinez contend that Taylor filed his notice of appeal too late,[5] so we lack appellate jurisdiction under 28 U.S.C. § 1291. We disagree. The district court entered a final Federal Rule of Civil Procedure 54(b) judgment on the claims relevant to this appeal on January 5, 2017. On January 14, 2017, Taylor timely filed a Federal Rule of Civil Procedure 59(e) motion to alter or amend that judgment. The district court denied the motion on January 30, 2017. Taylor had until thirty days after the Rule 59(e) denial to file his notice of appeal. *See* FED. R. APP. P. 4(a)(4)(A)(iv). Taylor did so on February 22, 2017, which is within the thirty-day limit. So, we have jurisdiction.

## II.

### A. *Standard of Review*

"We review a summary judgment *de novo*, applying the same standards as the district court. We construe all facts and inferences in the light most favorable to the nonmovant." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citations omitted). When a defendant pleads QI, however, "the burden

---

[5] Henderson and Orr filed a separate brief, and they do not contest our jurisdiction.

No. 17-10253

then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). We still draw all inferences in the plaintiff's favor. *Id.*

B. *Qualified Immunity and Eighth Amendment Claims*

The district court granted summary judgment for each defendant on the basis of QI. "The [QI] defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. A court may rely on either prong of the defense in its analysis." *Id.* (citations omitted). Thus, at the first prong, a prisoner bringing a § 1983 claim for violations of the Eighth Amendment must show that his Eighth Amendment rights were violated. *See id.*

An inmate must establish two elements—one objective, one subjective— to prevail on a conditions-of-confinement claim. *Arenas*, 922 F.3d at 620. First, he must show that the relevant official denied him "the minimal civilized measure of life's necessities" and exposed him "to a substantial risk of serious harm." *Id.* (quotation marks omitted). The "alleged deprivation" must be "objectively serious." *Id.* Second, the prisoner must show "that the official possessed a subjectively culpable state of mind in that he exhibited deliberate indifference" to the risk of harm. *Id.* (citations and quotation marks omitted).

Proving deliberate indifference is no small hurdle. *See id.* "A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it." *Id.* (quotation marks omitted). This is a fact-intensive inquiry "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004). "[A] factfinder may conclude that a prison official knew of a

4

No. 17-10253

substantial risk from the very fact that the risk was obvious." *Id.*

### III. *Cell-Conditions Claim*

In his complaint, Taylor contended that he was forced to reside in two unconstitutionally filthy cells for six[6] days. The defendants for that claim (Stevens, Riojas, Cortez, Hunter, Davidson, Swaney, Martinez, and Henderson) asserted QI and moved for summary judgment, which the district court granted. We affirm, because though there are factual disputes as to a constitutional violation, the law wasn't clearly established.[7]

### A.

Taylor stayed in the first cell starting September 6, 2013. He alleged that almost the entire surface—including the floor, ceiling, window, walls, and water faucet—was covered with "massive amounts" of feces that emitted a "strong fecal odor." Taylor had to stay in the cell naked. He said that he couldn't eat in the cell, because he feared contamination. And he couldn't drink water, because feces were "packed inside the water faucet." Taylor stated that the prison officials were aware that the cell was covered in feces, but instead

---

[6] Taylor was housed in one or the other cell on each day spanning September 6–13, 2013, but the total time he spent in the two cells equaled about six twenty-four-hour periods. Taylor alleged that he entered the first cell at about 11:00 p.m. on September 6 and left it sometime between noon and 1:00 p.m. on September 10. His time in the second cell lasted from about 2:00 p.m. on September 11 to 10:00 a.m. on September 13.

[7] Our reasons for affirming for Stevens and Henderson on the cell-conditions claim differ from that of the other defendants. Beyond contending that Stevens created unconstitutional prison policies—a claim we reject as explained below—Taylor has failed to make any allegation that Stevens was involved in placing him in unconstitutionally dirty cells. Taylor thus has failed to create a genuine factual dispute, and summary judgment for Stevens was proper. *See, e.g., Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (stating that the absence of evidence for the non-movant's claim is a proper basis for summary judgment). As for Henderson, Taylor failed to allege that Henderson knew about the conditions of either of Taylor's cells. Thus, Taylor can't create a genuine factual dispute on deliberate indifference. *See Boudreaux*, 402 F.3d at 544 (explaining that absence of evidence is a proper basis for summary judgment).

No. 17-10253

of cleaning it, Cortez, Davison, and Hunter laughed at Taylor and remarked that he was "going to have a long weekend." Swaney criticized Taylor for complaining, stating "[d]ude, this is [M]ontford, there is shit in all these cells from years of psych patients."[8] On September 10, Taylor left the cell.

A day later, September 11, Taylor was moved to a "seclusion cell," but its conditions were no better. It didn't have a toilet, water fountain, or bunk. There was a drain in the floor where Taylor was ordered to urinate. The cell was extremely cold because the air conditioning was always on.[9] And the cell was anything but clean.

Taylor alleged that the floor drain was clogged, leaving raw sewage on the floor. The drain smelled strongly of ammonia, which made it hard for Taylor to breathe. Yet, he alleged, the defendants repeatedly told him that if he needed to urinate, he had to do so in the clogged drain instead of being escorted to the restroom. Taylor refused. He worried that, because the drain was clogged, his urine would spill onto the already-soiled floor, where he had to sleep because he lacked a bed. So, he held his urine for twenty-four hours before involuntarily urinating on himself.[10] He stayed in the seclusion cell until September 13. Prison officials then tried to return him to his first, feces-covered cell, but he objected and was permitted to stay in a different cell.

Among other claims, Taylor sued Stevens, Riojas, Cortez, Hunter, Davidson, Swaney, Martinez, and Henderson under § 1983, complaining that the squalid conditions violated the Eighth Amendment. The defendants raised

---

[8] Taylor also alleged that he asked numerous prison officials to clean the cell but was refused.

[9] Swaney allegedly told Taylor that he hoped Taylor would "fucking freeze" in the seclusion cell, which was known to other prisoners as "the cold room."

[10] Taylor's contentions related to his involuntary urination are covered below.

the defense of QI and moved for summary judgment in part on that basis. Taylor responded mainly with his verified pleadings and a declaration.

The district court granted summary judgment on the basis of QI, noting that the defendants had "provided little in the way of specific summary judgment evidence to support their assertion that the cells were not, in fact, covered with feces." But the court found "merit in [d]efendants' general argument . . . that the alleged cell conditions [did] not rise to the level of a constitutional violation." The court held that (1) because Taylor was exposed to the paltry cell conditions "for only a matter of days," there was no constitutional violation under *Davis v. Scott,* 157 F.3d 1003 (5th Cir. 1998), and that (2) Taylor had not "show[n] that he suffered any injury." The court also found that the defendants had allowed Taylor to shower twice and had attempted to clean the first cell's walls. Taylor appeals, contesting the district court's application of *Davis* and averring that the court improperly resolved genuine factual disputes at summary judgment.

## B.

The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). At a minimum, prison officials "must provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* They cannot deprive prisoners of the "basic elements of hygiene" or the "minimal civilized measure of life's necessities." *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999) (quotation marks omitted). Prison conditions cannot inflict "wanton and unnecessary" pain. *Id.* at 351.

"[F]ilthy, unsanitary" cells can violate the Eighth Amendment. *Harper v. Showers,* 174 F.3d 716, 720 (5th Cir. 1999). In *McCord v. Maggio*, 927 F.2d

844, 848 (5th Cir. 1991), for example, we found a violation where a prisoner was forced, for a ten-month period, to sleep on a wet mattress "in filthy water contaminated with human waste." Such conditions were "unquestionably a health hazard" and were "so unhygienic as to amount to a clear violation of the Eighth Amendment." *Id.* The responsible official therefore did not "meet the threshold requirements for [QI]." *Id.*

Similarly, in *Gates*, 376 F.3d at 338, we held that officials had violated the Eighth Amendment in forcing prisoners to live in cells covered with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles." The district court hadn't clearly erred in finding that "[l]iving in such conditions" presented "a substantial risk of serious harm to the inmates." *Id.* And because the officials could have "easily observed" those deplorable conditions, there was no clear error in finding them deliberately indifferent to the risk. *Id.*

A dirty cell does not automatically violate the Constitution, however. A "filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). Heeding that instruction, we have held that a prisoner's three-day stay in a cell smattered with blood and excrement did not offend the Eighth Amendment—at least where the prisoner was given the chance to clean the cell. *See Davis*, 157 F.3d at 1005–06.

### 1. First Prong of Qualified Immunity

The first QI prong requires Taylor to show that his constitutional rights were violated. *Brown*, 623 F.3d at 253. Because this is a § 1983 Eighth Amendment claim at summary judgment, Taylor must show genuine factual disputes about (1) whether the defendants denied him the minimal civilized measure of life's necessities and put him at a substantial risk of serious harm

No. 17-10253

and (2) whether the defendants were deliberately indifferent to that risk. *Arenas*, 922 F.3d at 620.  Under our caselaw, Taylor succeeds.

### a. *Substantial Risk of Serious Harm*

In *McCord*, 927 F.2d at 848, and *Gates*, 376 F.3d at 338, we held it violated the Eighth Amendment to house prisoners in truly filthy, unsanitary cells.  The conditions that Taylor said existed were like those in *McCord* and *Gates*—if not worse.  He claimed that his first cell was covered in feces, including feces jammed inside his water faucet.  That is like the cell in *Gates*, *id.*, whose walls were covered in feces, urine, and dried ejaculate.  And Taylor alleged that the floor in his second cell was wet with urine and had a backed-up drain into which he was told to urinate, leaving him to sleep, naked, on the urine-soaked floor.[11]  That is much like the conditions that the prisoner in *McCord* endured—forced to sleep on a urine-soaked mattress on the floor each night.  *See McCord,* 927 F.2d at 848.

To be sure, *McCord* and *Gates* involved longer periods in deplorable conditions than the six days of which Taylor complains.  *See id.* (describing ten-month period); *Gates*, 376 F.3d at 338 (describing cell conditions to which prisoners were regularly exposed).  But even if the length of time matters, it isn't dispositive. *See Palmer*, 193 F.3d at 353 (stating that length of time is one factor to consider in "the totality of the specific circumstances").

The district court noted that the defendants had "provided little in the way of specific summary judgment evidence to support their assertion that the cells were not, in fact," in such deplorable conditions.  Instead of granting

---

[11] We do not suggest hold that prison officials cannot require inmates to sleep naked on the floor.  There can be any number of perfectly valid reasons for doing so.  Our holding is limited to the extraordinary facts of this case, in which Taylor alleges that the floor on which he slept naked was covered in his and others' human excrement.

summary judgment for the defendants, it should have recognized that Taylor's allegations created a factual dispute.[12]  For support, the court relied on *Davis*, 157 F.3d at 1005−06, which the defendants aver controls.  But *Davis* is distinguishable.[13]  Taylor spent twice as much time locked in his squalid cells as did the *Davis* prisoner: six days, compared to three.  And unlike the *Davis* prisoner, *see id.*, Taylor wasn't given the chance to clean his cells, as the district court found.[14]

The defendants also complain that Taylor offered only conclusional allegations, without supporting evidence, about the conditions.  But that ignores that verified pleadings are competent evidence at summary judgment.[15]  And

---

[12] *See* FED. R. CIV. P. 56(a); *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (verified pleadings are competent summary-judgment evidence where they are based on personal knowledge, set forth facts that would otherwise be admissible, and show that the affiant is competent to testify).

[13] The district court also relied on *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996).  The court there found no Eighth Amendment violation where a prisoner was housed in a cell with backed-up sewage (from an overflowing toilet) for four days.  *Id.* at 268–69.  The relatively short duration of the conditions, combined with the fact that the prisoner refused an opportunity to flush the toilet and clean the cell, meant no constitutional offense.  *See id.*

Yet for the reasons that *Davis* is distinguishable, *Smith* is, too.  Taylor alleges that he spent six days in his filthy cells—which is longer than the four days in *Smith*.  And, even more relevantly, unlike the prisoner in *Smith*, Taylor wasn't given the chance to clean his cell.

[14]  The district court did find that the defendants had attempted to clean Taylor's cells and relied upon that in granting summary judgment.   Yet in doing so, the court improperly resolved a genuine factual dispute.  *See* FED R. CIV. P. 56(a).  Taylor contends that the defendants attempted to clean his first cell (the feces-covered one) only *after* he left it.  As to the seclusion cell, Taylor states, in his complaint, that Riojas tried to "spot dry[]" its floor on September 12, one day after Taylor had entered that cell.  But Taylor contended that "lots of urine/sewage still remained on [his] floor" after the spot dry.  Thus, whether—and the extent to which—the defendants attempted to clean Taylor's cell was a factual dispute ill-suited for summary judgment.  *See id.*

[15] *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) (holding that verified pleadings are competent summary judgment evidence where they are based on personal knowledge, set forth facts that would otherwise be admissible, and show that the affiant is competent to testify); *Hernandez*, 522 F.3d at 561 (same).

even though Taylor's pleadings include conclusional language, they also teem with specific factual allegations.[16] We thus find genuine factual disputes over whether the paltry conditions of Taylor's cells exposed him to a substantial risk of serious harm and denied him the minimal civilized measure of life's necessities. *See Arenas*, 922 F.3d at 620.

### b. *Subjective Deliberate Indifference*

Taylor has created genuine factual disputes on the subjective deliberate-indifference prong of his Eighth Amendment claim. *See id.* "Deliberate indifference is an extremely high standard to meet. A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it." *Id.* (cleaned up). Deliberate indifference can be proven via circumstantial evidence, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Gates*, 376 F.3d at 333.

Taylor repeatedly alleged that the defendants knew that his cells were covered in feces and urine and that he had an overflowing sewage drain in his seclusion cell. "The risk" posed by Taylor's exposure to bodily waste "was obvious."[17] And the risk was especially obvious here, as the defendants forced

---

[16] Take Page 4-A of Taylor's verified complaint as an example. To be sure, that page includes some conclusional language. For example, Taylor states that he was subjected to "unnecessary and wanton infliction of pain contrary to the contemporary standards of decency" and that the prison officials had "showed deliberate indifference to [his] safety and health." But that's not all that Taylor says. He also recites highly specific facts about the feces-smeared contents of his cell, Cortez's dismissive remarks about the feces, the temperature of the room, and so on.

[17] *See Gates*, 376 F.3d at 333; *see also id.* at 341 ("Frequent exposure to the waste of other persons can certainly present health hazards that constitute a serious risk of substantial harm.").

No. 17-10253

Taylor to sleep naked on a urine-soaked floor. Taylor also alleged that the defendants failed to remedy the paltry conditions, so he has shown factual disputes on deliberate indifference. In sum, Taylor has met his burden at the first QI prong to show that his Eighth Amendment rights were violated. *See Arenas*, 922 F.3d at 620.

### 2. *Second Prong of Qualified Immunity*

The second prong of QI asks "whether the right was clearly established at the time of the violation." *Brown*, 623 F.3d at 253. We should not define the relevant right "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The "salient question," therefore, is whether the defendants had "fair warning" that their specific actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).[18]

The law wasn't clearly established. Taylor stayed in his extremely dirty cells for only six days. Though the law was clear that prisoners couldn't be housed in cells teeming with human waste for months on end, *see, e.g.*, *McCord*, 927 F.2d at 848, we hadn't previously held that a time period so short violated the Constitution, *e.g.*, *Davis*, 157 F.3d at 1005–06 (finding no violation partly because the defendant stayed in the cell for only three days). That dooms

---

[18] *Accord Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018) ("The central concern is whether the official has fair warning that his conduct violates a constitutional right."); *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) ("[O]fficers need only have fair warning that their conduct is unlawful." (quotation marks omitted)).

Taylor's claim.  Indeed, the ambiguity in the caselaw was apparent even in *dicta* from the Supreme Court, which has instructed that a "filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto*, 437 U.S. at 686–87.  It was therefore not "beyond debate" that the defendants broke the law.  *al-Kidd*, 563 U.S. at 741.  They weren't on "fair warning" that their specific acts were unconstitutional.  *Hope*, 536 U.S. at 741.

Accordingly, Taylor hasn't met his burden to overcome QI on his cell-conditions claim.  Though he showed genuine disputes about a constitutional violation, the law wasn't clearly established.  We therefore affirm the summary judgment for Riojas, Cortez, Hunter, Davidson, Swaney, and Martinez on that claim.  (And, for separate reasons explained above, we affirm the summary judgment for Stevens and Henderson on that claim.)

## IV.  *Claims of Deliberate Indifference to Health and Safety*

Taylor contends that the district court erred in granting summary judgment for various defendants on his claims of indifference to his health and safety.  Specifically, he appeals on three such claims for which the court granted summary judgment:

A. That Riojas, Martinez, Ortiz, and Henderson were deliberately indifferent in refusing to escort Taylor to the restroom for a twenty-four-hour period on September 12, 2013.

B. That Riojas, Martinez, and Henderson were deliberately indifferent in failing immediately to assess his chest pains on September 12, 2013.

C. That Orr was deliberately indifferent in failing immediately to examine Taylor after Taylor requested to see a doctor on September 14, 2013.

## A.  *Denial of Restroom Visit*

Taylor contends that the district court erred in granting summary judgment on Taylor's claim that Riojas, Martinez, Ortiz, and Henderson were

deliberately indifferent to Taylor's health in refusing to escort him to the toilet for twenty-four hours on September 12, 2013.  Taylor alleged that he repeatedly asked Riojas, Ortiz, and Martinez to take him from his seclusion cell to the restroom that day.  But they told him to urinate in the drain in his cell's floor, even though it was already overflowing with sewage.  Taylor refused to do so because he didn't want to spill even more urine onto the floor where he would have to sleep—naked—that evening.

Finally, after holding in his urine for twenty-four hours, Taylor's bladder pain intensified, and he urinated involuntarily on himself.  He alleged that he "tried to get [his urine] in the drain," but that because the drain was clogged, his urine "mix[ed] with the raw sewage and r[a]n all over [his] feet."  Taylor "got down on [his] hands and knees and began to scoop the sewage away from the area of the floor" where he would have to sleep that night.  Eventually, he had to be treated for a distended bladder and was catheterized.

In moving for summary judgment, Riojas, Ortiz, Martinez, and Henderson raised QI.  The district court noted that they had not "directly den[ied] [Taylor's] allegations that they refused him the opportunity to use the restroom . . . or that they advised him to pee in the drain like everyone else."  But the court granted summary judgment anyway.  It found that (1) security notes that the defendants had provided contradicted Taylor's allegations, showing that Taylor had repeatedly refused to visit the toilet on September 12 and *had* been taken around 7:00 p.m.; (2) Taylor had "not provided anything other than unsupported and conclusory assertions that he was denied the opportunity to go to the restroom for 24 hours"; (3) Taylor "ha[d] not demonstrated that it was not physically possible for him to relieve himself in the drain as instructed and thus prevent his discomfort"; and (4) Taylor had failed to "establish a physical injury that [was] more than *de minimis*."  Thus, the court decided that the

14

No. 17-10253

defendants were entitled to QI because Taylor had not shown a constitutional violation.

We reverse the summary judgment except as to Henderson.[19] Restating the law from above, to overcome QI, Taylor must show genuine factual disputes that his clearly established Eighth Amendment rights were violated. *Brown*, 623 F.3d at 253. That requires him to show a fact issue over whether (1) objectively, the defendants exposed him to a substantial risk of serious harm and denied him the minimal civilized measure of life's necessities and (2) subjectively, the defendants were deliberately indifferent to the risk. *See Arenas*, 922 F.3d at 620. Taylor also must demonstrate that the right was clearly established. *Brown*, 623 F.3d at 253.

In *Palmer*, 193 F.3d at 352, we found an Eighth Amendment violation where prison officials "complete[ly] depriv[ed]" "scores of inmates" of a minimally sanitary way to relieve themselves for seventeen hours. Forty-nine inmates were forced to sleep outdoors overnight, confined to a twenty-by-thirty-foot area. *Id.* at 349. Prison officials refused to let the inmates leave the small area to relieve themselves. Instead, the prisoners had to urinate and defecate in the ground beneath them, right next to their fellow inmates. *See id.* We held that the prisoners' Eighth Amendment rights had been violated, even though the episode lasted a mere seventeen hours. *Id.* at 353–54. The "conditions constitute[d] a deprivation of basic elements of hygiene." *Id.* at 352

---

[19] Even taken as true, Taylor's allegations against Henderson regarding the failure to take Taylor to the restroom don't establish a constitutional violation. So, we affirm summary judgment for Henderson on that claim. In his complaint, Taylor alleged only that he told Henderson that he "need[ed] to use the restroom really bad," and that Henderson responded that she would "let the officers know." Taylor didn't allege that Henderson failed to notify the officers. And even if Henderson did fail to do so (which is not in the record), such would amount, at most, to a showing of negligence, not deliberate indifference. That is not enough to create an Eighth Amendment violation. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019). Summary judgment for Henderson on the restroom claim was proper.

15

(quotation marks omitted).

So too for Taylor. Granted, the circumstances differ in some ways from those in *Palmer*. *See id.* Taylor was alone in his prison cell the day he was allegedly refused a trip to the restroom; he was not outdoors overnight, crammed into a small space with other inmates. Yet the most salient facts are similar. Taylor alleged that sewage from the clogged drain was overflowing. Had he urinated in the drain, he would have been resigned to sleep naked in his (and others') urine overnight. So, he refused (until finally involuntarily urinating on himself). The prisoners in *Palmer* were faced with a similarly grisly choice: either relieve themselves on the very ground where they would sleep, or, hold it in for seventeen hours. Such circumstances exposed the *Palmer* prisoners to a substantial risk of serious harm and deprived them of the minimal civilized measure of life's necessities. *See id.* A reasonable jury could find the same here.

Taylor also has met his burden to show genuine factual disputes on subjective deliberate indifference. *See Arenas*, 922 F.3d at 620. Taylor alleged that he told Riojas, Martinez, and Ortiz that he couldn't urinate in the drain because of the overflow and that he badly needed to use the restroom. Yet those defendants repeatedly refused to escort him to the restroom, instead instructing him to pee in the clogged drain like everyone else.

We found deliberate indifference in similar circumstances in *Palmer*, 193 F.3d at 353. The prison officials there were deliberately indifferent because they "ordered the sleep-out," refused to let prisoners relieve themselves outside the confined area, and were "present during the evening." *Id.* Similarly, Riojas, Martinez, and Ortiz allegedly refused to let Taylor urinate anywhere other than into his clogged drain, knew that meant he would have to sleep in his own urine, and were present for those events. Taylor has

established fact issues as to deliberate indifference.

Having found a constitutional violation, we also conclude that *Palmer* clearly established the underlying Eighth Amendment right, even defining it narrowly (as we must). *See id.* at 352–53. Under *Palmer*, prison officials cannot fail to provide inmates a minimally sanitary way[20] to relieve themselves for a period of seventeen hours, leaving them no choice but to sleep in their own waste overnight. *See id.* The time period Taylor alleged is even longer: a full day.

In defending the summary judgment, the defendants contend that "Taylor was constantly refusing to take trips to the restroom" on the day in question. But even if we found that view of the evidence more persuasive (as the district court did[21]), it would not be for us to resolve at summary judgment.[22] Indeed, the district court noted that "R[i]ojas, Ortiz, and Martinez [did] not directly deny [Taylor's] allegations that they refused him the opportunity to use the restroom . . . or that they advised him to pee in the drain like everyone

---

[20] Nothing in this opinion requires prison officials to provide a prisoner with a squeaky-clean toilet nor to escort him to the restroom whenever he wishes. This case is extraordinary: McCoy alleges that he was refused a trip to the restroom for twenty-four hours and was provided no other sanitary way to relieve himself, which forced him to urinate on himself and on the very ground where he had to sleep. We held that similar circumstances violated the Constitution in *Palmer*, and we find the same here. We go no further.

[21] The district court credited the defendants' security-note evidence as showing that Taylor had repeatedly refused to use the restroom on September 12 and had used the restroom one time that evening. By contrast, the court characterized Taylor's pleadings as providing "unsupported and conclusory assertions that [Taylor] was denied the opportunity to go to the restroom." We disagree. Taylor's allegations were hardly conclusory; they recited specific instances in which Taylor told Riojas, Martinez, and Ortiz that he badly needed to use the restroom and in which they refused to take him. And allegations in verified pleadings are competent summary judgment evidence, so it was wrong for the district court to dismiss them. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

No. 17-10253

else." The district court should have seen the implications—a genuine factual dispute.

The defendants also maintain that to state a claim, Taylor was "required to establish a physical injury beyond *de minimis*." They're right that, under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), Taylor, to recover for emotional suffering, must show a more-than-*de-minimis* physical injury. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). But Taylor has shown such an injury. As a result of holding in his urine for so long, his bladder became distended, and he had to be catheterized.[23]

Accordingly, there are genuine factual disputes whether Riojas, Martinez, and Ortiz violated Taylor's Eighth Amendment rights in refusing to escort him to the restroom for twenty-four hours.[24] Those defendants are not entitled to QI, and the district court erred in granting them summary judgment on that claim.

## B. *Chest Pain*

The district court granted summary judgment for Riojas, Martinez, and Henderson on Taylor's claim that they violated the Eighth Amendment by ignoring his complaints of chest pain on September 12, 2013. On appeal, Taylor only briefly mentions that issue and fails to argue any error relating to it, so it is waived.

---

[23] *Cf. Edwards v. Stewart*, 2002 WL 1022015, at *2 (5th Cir. May 10, 2002) (holding that injuries of "cuts to [the prisoner's] fingers and thumb, headache, neck pain, and lacerations to the ear," weren't *de minimis*, particularly because the prisoner had needed "medical treatment for the injuries").

[24] For the reasons described above, however, we affirm summary judgment for Henderson on the restroom-trip claim.

No. 17-10253

## C. *Delay in Medical Treatment*

Taylor challenges the summary judgment for nurse Stephanie Orr, who Taylor alleged had violated the Eighth Amendment in failing immediately to examine and treat him after he asked to see a doctor. Taylor contended that on Saturday, September 14, 2013, he was having bladder pain and decided he needed to see a doctor. Orr visited Taylor in his seclusion cell, where Taylor asked to meet with a doctor. Taylor did not allege that he told Orr *why* he needed one. Orr replied that Taylor should write up a "nurse sick-call" two days later on Monday—which was the standard procedure. At that point, the conversation ended.

Later that day, at about 4:00 p.m., Taylor's bladder pain worsened. He contacted Orr again, and this time he explained *why* he needed a doctor. Orr allegedly responded: "How come you didn't say anything sooner?" Orr then assessed Taylor, determined he had a distended bladder, and sent him to the ER, where he was catheterized.

Taylor contends on appeal that Orr was deliberately indifferent in failing to assess him immediately after he requested a doctor. The district court rejected that contention and granted summary judgment for Orr based on QI. It held that, at most, Taylor's allegations showed that Orr had behaved negligently and not with deliberate indifference.

We agree with the district court and affirm summary judgment for Orr. Merely negligent medical treatment of prisoners "does not constitute deliberate indifference." *Arenas*, 922 F.3d at 620. Instead, an inmate "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly," or otherwise "evince[d] a wanton disregard for any serious medical needs." *Id.* (quotation marks omitted). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been

19

deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Taylor has failed to reveal any factual dispute whether Orr violated his Eighth Amendment rights. Even accepting his allegations at face value, they show only negligence, not deliberate indifference. *See Arenas*, 922 F.3d at 620. Taylor did not allege that Orr knew about his bladder pain until 4:00 p.m., when he reached out to her a second time. Orr admonished him for failing to tell her earlier about the bladder pain, and she promptly and dutifully evaluated him and sent him to the ER. Deliberate indifference is a high bar, and Taylor does not come close to demonstrating it. *See id.*

## V. *Claim of an Unconstitutional Policy*

Taylor contends that the district court improperly granted summary judgment for Warden Robert Stevens based on QI. Taylor avers that Stevens promulgated and implemented unconstitutional policies that facilitated Taylor's mistreatment at the Montford Unit. The district court rejected that claim, reasoning that because Taylor hadn't shown that any of the other defendants had violated Taylor's rights, Stevens—their supervisor—couldn't have violated them, either.

To be sure, above we concluded that a reasonable jury *could* have found that several defendants violated Taylor's constitutional rights. Yet we may affirm on any basis that the record supports, *see Lincoln v. Scott*, 887 F.3d 190, 195 (5th Cir. 2018), and here we choose to do so, because Taylor has failed to point our attention to any specific policy.

Under § 1983, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is

the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (cleaned up). But as a threshold matter, a plaintiff cannot avoid summary judgment merely by asserting the legal conclusion that an unconstitutional policy existed.[25] That is precisely what Taylor does. The district court therefore properly granted summary judgment for Stevens on the basis of QI.

\* \* \* \*

In summary, for the reasons stated, we decide as follows:

- We AFFIRM the summary judgment for Riojas, Cortez, Hunter, Davidson, Swaney, Martinez, Stevens, and Henderson on Taylor's claim related to the conditions of his cells.

- We REVERSE and REMAND the summary judgment for Riojas, Martinez, and Ortiz on Taylor's claim related to their failure to take him to the restroom, but we AFFIRM summary judgment for Henderson on that claim.

- We AFFIRM the summary judgment for Riojas, Martinez, and Henderson on Taylor's claim related to their failure to treat his chest pain.

- We AFFIRM the summary judgment for Orr on Taylor's claim related to Orr's failure to treat his bladder pain.

- We AFFIRM the summary judgment for Stevens on Taylor's claim that Stevens promulgated an unconstitutional policy.

We place no limitation on the matters that the district court can consider consistent with this opinion, nor do we suggest what decisions that court should make.

---

[25] *See Booker v. Koonce*, 2 F.3d 114, 117 (5th Cir. 1993) (pointing out that conclusory allegations are not enough to defeat summary judgment); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (affirming dismissal because the complaint "fail[ed] to identify any specific policy or to explain how those policies led to constitutional violations"); *Sun v. United States*, No. 94-10604, 1995 WL 103351, at \*4 (5th Cir. Mar. 1, 1995) (per curiam) (affirming summary judgment on the basis of QI because "Sun's unsupported allegations of the existence of a policy are merely conclusional.").