# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 1, 2023

Lyle W. Cayce
Clerk

No. 22-40381

Dustin Reynolds,

*Plaintiff—Appellant,*

*versus*

Wood County, Texas; Angela Speakman; Bradley Cox;
Chelsea Fuller; Mark Taylor; Logan Miller,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:20-CV-271

Before Higginbotham, Southwick, and Willett, *Circuit Judges.*
Per Curiam:[*]

This case involves alleged constitutional violations committed by officers when they placed a detainee in a restraint chair for approximately 14 hours and allowed him to urinate on himself. We AFFIRM the district court's grant of summary judgment as to the individual officer-defendants' qualified immunity and as to municipal liability against Wood County.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40381

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 3, 2018, Wood County Deputy William Burge observed Plaintiff Dustin Reynolds consuming a beer and possessing a dog in the water of Lake Holbrook, which were both violations of the lake's governing rules. When Burge approached Reynolds and asked for his identification, Reynolds became angry and began to yell and use profanity. As Burge attempted to run Reynolds's driver's license number, Reynolds continued yelling profane language. Burge then activated his body camera.

As Burge arrested Reynolds, Reynolds continued to yell obscenities and resist arrest. During transport to the Wood County Jail, Reynolds repeatedly kicked and used his hands to hit the back seat of Burge's patrol vehicle, yelling profanities at Burge. Reynolds hit his own head against the partition in the patrol vehicle several times.

Upon arrival at the jail around 7:00 p.m., Reynolds exited the vehicle yelling and resisting escort into the jail. As he was escorted into the jail, Reynolds attempted to kick and spit at officers as he continued to shout profanities, and he refused to answer intake questions.

To protect Reynolds and the jail staff, the officers then strapped Reynolds into a restraint chair and placed a spit mask over his mouth. Officers tried to complete the booking process with Reynolds multiple times, but he remained combative and refused to answer all questions. Promptly after being strapped into the restraint chair, a nurse tended to Reynolds's superficial wounds, then checked on him again later.

Reynolds remained in the restraint chair until his hearing before a magistrate judge the following morning on July 4. He stayed in the restraint chair for a total of 14 hours, during which time he was offered water and limb exercises. Throughout the night, officers checked on Reynolds every 15 minutes.

No. 22-40381

On the morning of July 4, while in the restraint chair, Reynolds urinated on himself. About one hour later, officers released Reynolds from the restraint chair and provided him clean clothes. Following his hearing, he was permitted to shower.

Reynolds later filed suit against Wood County, Texas, and jail officers Mark Taylor, Angela Speakman, Logan Miller, Chelsea Fuller, and Bradley Cox in their individual capacities. Reynolds alleged the following claims under 42 U.S.C. § 1983: (1) excessive force against Speakman, Taylor, Fuller, Miller, and Cox; (2) deliberate indifference against Speakman, Taylor, Fuller, Miller, and Cox; (3) deliberate indifference against Cox; (4) bystander liability against Speakman, Taylor, Fuller, Miller, and Cox; and (5) deliberate indifference against Wood County.

The district court granted the defendants' motions for summary judgment, finding that the individual officer-defendants were entitled to qualified immunity and that Reynolds could not establish liability against Wood County. Reynolds timely appealed.

## DISCUSSION

This court reviews a grant of summary judgment *de novo*, applying the same standard the district court applied. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Factual disputes are material if they "might affect the outcome of the suit under the governing law," and they are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, an individual defendant asserts qualified immunity, plaintiffs "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly

wrongful conduct violated clearly established law." *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018) (quotation marks and citation omitted).

On appeal, Reynolds challenges the district court's grant of summary judgment on all claims. We consider the claims separately.

### I.     *Qualified immunity for the individual officer-defendants*

Reynolds contends the district court erred in granting the individual officer-defendants qualified immunity as to his Section 1983 claims for excessive force, bystander liability, and deliberate indifference.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). The test for qualified immunity involves two steps: "first we ask whether the officer's alleged conduct has violated a federal right"; "second we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quotation marks and citation omitted).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (quotations marks and citations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590. The Supreme Court has explained that its "'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the *particular* circumstances before him." *Id.* (emphasis added).

No. 22-40381

The Court has also stated, though, that cases involving "fundamentally similar" facts are not always necessary to provide the "fair warning" that officers require. *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (quoting *Hope*, 536 U.S. at 741).

    *a.    Excessive force*

Reynolds argues the district court improperly granted the individual officer-defendants qualified immunity on Reynolds's excessive force claim. Reynolds concedes it was reasonable for the officers to place him in a restraint chair while he was initially combative, but he argues it was objectively unreasonable in light of clearly established law to keep him in the restraint chair for an additional 12 to 13 hours after he calmed down and was compliant.

"A pretrial detainee receives the protection of the Due Process Clause of the Fourteenth Amendment." *Brothers v. Klevenhagen*, 28 F.3d 452, 455–56 (5th Cir. 1994). Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force is objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Courts weigh the following factors to determine reasonableness:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

No. 22-40381

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

We agree with the district court that genuine fact disputes exist as to whether the officers' conduct violated Reynolds's constitutional rights as a pretrial detainee. As the district court found, "the facts about whether Reynolds presented a continued threat — the justification for the restraint chair — are disputed." We therefore focus our analysis on whether the alleged violated right was clearly established. The district court determined there was insufficient clarity to deny qualified immunity.

Reynolds relies primarily on the 2002 Supreme Court decision *Hope v. Pelzer*, 536 U.S. 730. There, prison guards forced plaintiff Hope to stand with his arms over his shoulders and handcuffed to a hitching post, shirtless, in the sun for seven hours, while giving him water only once or twice and denying him access to the restroom. *Id.* at 734–35. The guards taunted Hope about his thirst by giving water to dogs and spilling water from a cooler on the ground in front of him. *Id.* at 735. Finding that the actions were punitive and served no penological purpose, the Supreme Court concluded the guards had violated Hope's Eighth Amendment rights. *Id.* at 737–38. *Hope* stands for the proposition that a violation can be so blatant or egregious that officers need no on-point precedent to know their conduct is illegal because of the "obvious cruelty inherent" in handcuffing a prisoner to a post for seven hours. *Id.* at 745.

6

No. 22-40381

The district court found that the facts in *Hope* are distinguishable from those in this case. The overarching constitutional violation was the act of handcuffing the inmate to a hitching post and taunting him. *Id.* at 745–46. In *Hope*, there was no underlying security reason for the inmate's treatment; it was purely punitive and the guards purposely increased Hope's pain and suffering. *Id.* at 737–38.

In contrast, Reynolds was placed in a restraint chair in a climate-controlled facility, was checked on every 15 minutes, and was offered necessities such as water, limb exercises, and medical care. Additionally, detention in the restraint chair resulted from his unsafe behavior and, though temporarily uncomfortable, was not objectively severe enough to violate the Fourteenth Amendment. Further, as the district court correctly noted, "nothing in *Hope* indicates at what point a restraint would become unconstitutional once an inmate quiets down." Thus, *Hope* provides no support for Reynolds's contention that remaining in the restraint chair under these circumstances violated his clearly established constitutional rights.

Reynolds also relies on one of this court's opinions that held, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009). In that case, following a brief police chase, the officer-defendant fired his sidearm twice in the rear of a vehicle, striking and killing a passenger. *Id.* at 407–08. Firing a deadly weapon at a fleeing vehicle containing passengers is not analogous to strapping a combative detainee in a restraint chair and monitoring him throughout the night.

Reynolds's burden was to identify caselaw that put the individual officer-defendants on notice that their alleged conduct was unlawful. Reynolds has not met his burden. Reynolds therefore cannot demonstrate that all reasonable officers would have believed it was a violation of a detainee's

constitutional rights to keep him in a restraint chair for 14 hours under these circumstances. Qualified immunity as to the excessive force claims was properly granted.

### b.　　Bystander liability

As Reynolds acknowledges, "this Court's resolution of the excessive force claim will also resolve the bystander liability claim." "An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

Thus, the individual officer-defendants are not liable on Reynolds's bystander liability claim because the underlying excessive force claim fails.

### c.　　Deliberate indifference

Reynolds alleges all individual officer-defendants violated his Fourteenth Amendment rights by subjecting him to a substantial risk of serious bodily harm and responding with deliberate indifference. Specifically, Reynolds opposes summary judgment on the ground that he was denied restroom access and forced to remain in his urine for over an hour in the restraint chair.

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). Reynolds must demonstrate "(1) objectively, the defendants exposed him to a substantial risk of serious harm and denied him the minimal civilized measure of life's necessities and (2) subjectively, the defendants were deliberately indifferent to the risk." *Taylor v. Stevens*, 946 F.3d 211, 224 (5th Cir. 2019). "Deliberate indifference is an extremely high

standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Deliberate indifference may be established through inferences arising from circumstantial evidence, and a factfinder may infer the requisite knowledge from the fact that the risk of harm was "obvious." *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Dyer v. Houston*, 964 F.3d 374, 385 (5th Cir. 2020). A custodial officer acts with deliberate indifference to a detainee's serious medical needs if the officer "'refuse[s] to treat him, ignore[s] his complaints, intentionally treat[s] him incorrectly, or engage[s] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Sims v. Griffin*, 35 F.4th 945, 951 (5th Cir. 2022) (quoting *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006)).

The district court found that "denying Reynolds restroom access under the circumstances here did not create a substantial risk of serious harm." While we have held that denying inmates "a minimally sanitary way to relieve themselves" may expose them to a substantial risk of serious harm, we cautioned that such cases are "extraordinary" and explicitly warned that "[n]othing in th[ese] opinion[s] requires prison officials to provide a prisoner with a squeaky-clean toilet nor to escort him to the restroom whenever he wishes." *Taylor*, 946 F.3d at 225, 225 n.20 (citing *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999)). We acknowledge the obvious — that Reynolds is not complaining that the toilet provided was not squeaky-clean. The complaint is that no access to a toilet, clean or not, was provided.

In our *Taylor* decision, prison officials ordered the plaintiff "to urinate in the drain in his cell's floor, even though it was already overflowing with sewage." *Id.* at 223. After more than 24 hours, the plaintiff's bladder pain was so great that he involuntarily urinated into the drain, which overflowed and spilled sewage onto the floor, on which he was forced to sleep naked. *Id.*

No. 22-40381

"Eventually, [the plaintiff] had to be treated for a distended bladder and was catheterized." *Id.* We held that a reasonable jury could find that in these circumstances the plaintiff was exposed "to a substantial risk of serious harm and deprived . . . of the minimal civilized measure of life's necessities." *Id.* at 224.

Similarly, *Palmer v. Johnson* dealt with a plaintiff and 48 other inmates who were forced to sleep outdoors overnight; were confined to a 20-by-30-foot area bounded by poles and lights for 17 hours; were denied shelter, jackets, blankets, or other means of keeping warm in temperatures below 59 degrees; were exposed to noxious fumes; and were made to urinate and defecate in the ground beneath themselves, right next to their fellow inmates. 193 F.3d at 349–50.

We agree with the district court that both *Taylor* and *Palmer* are distinguishable from this case:

> Reynolds's deprivation here was very different. Reynolds was not held in an unsanitary cell, was not exposed to sewage or the waste of others, and was not forced to urinate and defecate in a confined area shared with other detainees. Rather, Reynolds was kept in a clean, climate-controlled cell by himself with Defendants checking on him regularly.

Reynolds sat in his urine for just "over an hour" before the officers released him from the restraint chair, gave him a clean jail uniform, had the floor mopped, and permitted Reynolds to take a shower. Reynolds's alleged injuries, at worst, amount to temporary sensations of discomfort, not serious harm. As the district court stated, "Reynolds was not subjected to inhumane conditions and was given an opportunity to clean himself after release." Accordingly, Reynolds cannot show a substantial risk of serious harm.

Moreover, there is no evidence that the individual officer-defendants acted with deliberate indifference to such alleged risk. Reynolds's only

allegation in support of his contention is that officers should have known he would urinate on himself if kept in the restraint chair overnight, and that Defendant Cox allegedly told Reynolds he should urinate on himself. Neither the refusal to release Reynolds from the chair nor Defendant Cox's alleged statement is evidence that any individual officer-defendant was actually aware of a substantial risk of serious harm or subjectively intended that harm occur.

In sum, Reynolds cannot show the individual officer-defendants possessed information that made them subjectively infer that a substantial risk of serious harm existed and that they intended harm to occur. Qualified immunity for the individual officer-defendants was properly granted as to all of Reynolds's constitutional claims.

## II.    Monell *liability against Wood County*

Reynolds also asserts the district court erred in granting summary judgment as to his deliberate indifference claim against Wood County. Reynolds contends Wood County maintained a "custom and practice" of using the restraint chair longer than necessary and as a form of punishment.

Local governments are liable for a policy or custom that causes a constitutional injury under Section 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). To succeed on a municipal liability claim, plaintiffs must show "(1) an official policy (or custom), (2) of which a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quotations marks and citations omitted).

An official policy is "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated

policy-making authority." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). An official policy can also be

> [a] persistent, widespread practice of city officials or employ-ees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to consti-tute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Id.*

Proving a custom or practice "requires sufficiently numerous prior in-cidents, as opposed to isolated instances." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quotations marks and citations omitted). Prior incidents must be similar and specific: "prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific viola-tion in question." *Id.* (quotation marks and citation omitted). Isolated inci-dents of official misconduct by a governmental entity's non-policymaking employees are inadequate to prove knowledge and acquiescence by the en-tity's policymakers. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

The district court here held that Reynolds cannot establish municipal liability against Wood County because there was no evidence of a policy or custom, and Reynolds failed to show a policymaker had knowledge of the al-leged unconstitutional policy. Reynolds's only evidence of an allegedly un-constitutional "custom and practice" are over 50 "15 Minute Check Sheets" showing the instances in which the restraint chair was used in the Wood

No. 22-40381

County Jail between February 19, 2018, and July 26, 2019.[2]  The district court found two problems with Reynolds's summary judgment evidence.  First,

> the logs fail to provide enough detail for the court or any reasonable juror to determine whether using the restraint chair in the prior instances was improper.  Each of the fifty-three check sheets identifies only the detainee's name, the date, and the times a jailer checked on the detainee in the chair.

Reynolds admits, "the use of a restraint chair is not *ipso facto* unconstitutional."  Reynolds argues, though, the district court should have inferred — from the face of the Check Sheets only — that inmates without a "4" notation for "combative" were not combative.  The district court addressed why it could not make such an assumption:

> Reynolds offers no evidence corroborating his claim that every time an officer failed to mark "combative" on a log the detainee had ceased to pose a threat.  The logs therefore show nothing more than Defendants using a restraint chair on other detainees.

As the district court stated, using a restraint chair, even for extended periods, is not inherently unconstitutional.  For example, a panel once held that restraining a pretrial detainee for up to 20 hours was not unconstitutional, because the restraint was necessary to prevent the detainee's disruptive behavior.  *Blakeney v. Rusk Cnty. Sheriff*, 89 F. App'x 897, 899 (5th Cir. 2004).  We agree that the length of time for the restraint will not generally be enough to show a constitutional violation. The Check Sheets merely show

---

[2] Wood County objected to the admissibility of the "15 Minute Check Sheets." The district court determined that it "need not decide the objection because even assuming the logs are admissible, the Court concludes that they are insufficient to raise a genuine issue of material fact to defeat summary judgment."  We agree with the district court and therefore do not revisit Wood County's renewed objection on appeal.

use of the restraint chair for various amounts of time, not whether the use was improper.

Second, the district court cited some Fifth Circuit caselaw disfavoring finding an unconstitutional custom or practice based upon "historical records lacking contemporaneous allegations of misconduct." *See Davidson v. City of Stafford*, 848 F.3d 384, 396 & n.6 (5th Cir. 2017), *as revised* (Mar. 31, 2017); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). Reynolds has produced no prior lawsuits or complaints involving use of the restraint chair in the Wood County Jail. In fact, insofar as this record shows, Reynolds's complaint is the first.

The Check Sheets, therefore, cannot establish a custom or practice of improperly using the restraint chair. "Mere 'improbable inferences' and 'unsupported speculation' are not proper summary judgment evidence." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010).

The district court properly granted summary judgment on the *Monell* claim.

AFFIRMED.

14